UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
T.R., a minor, by and through his mother
and natural guardian, Shawnita Yon-
Rawls,

        Plaintiff,

    - against -

THE CITY OF NEW YORK and NYPD POLICE
OFFICERS WILLIAM CONCANNON, (Shield
#23380), NICHOLAS LEVESQUE, (Shield
#15044), SGT. EDWIN CHING, (Shield
#1578), SGT. FRANKLIN BOHR, (Shield
#2618), and JOHN DOES NOS. 1, 2, 3, ETC.,
(whose identities are unknown but who
are known to be personnel of the New
York City Police Department), all of
whom are sued individually and in their
official capacities,

        Defendants.
--------------------------------------X

**MEMORANDUM AND ORDER**

15 Civ. 7582 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Following his June 2014 arrest and subsequent prosecution for possession of ammunition, magazines, and a firearm, plaintiff T.R., a minor, by and through his mother and natural guardian, Shawnita Yon-Rawls ("plaintiff") brings this lawsuit, asserting claims for deprivation of his constitutional rights, as well as common law torts under New York law, against the City of New York and several of its police officers. Following lengthy discovery, all named defendants and the City of New York (collectively, "defendants") have moved for summary judgment pursuant to Federal

Rule of Civil Procedure 56. For the reasons we describe *infra*, defendants' motion is granted *in toto*.

I. **BACKGROUND**

a. **Factual Background**

On June 26, 2014, New York City Police Department Officer William Concannon ("Concannon") received information from an unnamed prisoner that Gerard Jones ("Jones"), for whom there was an outstanding arrest warrant, was residing in Apartment 8E at 3 West Farm Square Plaza in the Bronx ("Apartment 8E"). See Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1") ¶ 4, ECF No. 54; Declaration of Alexander Noble ("Noble Decl.") Ex. Q (Deposition of Franklin Bohr ("Bohr Dep.")) 21:15-27:19, ECF No. 57; id. Ex. O (Deposition of Edwin Ching ("Ching Dep.")) 51:6-21; id. Ex. B (Deposition of William Concannon ("Concannon Dep.")) 90:10-91:17. The prisoner also reported that a TEC-9 semi-automatic firearm belonging to Jones was located in the back bedroom of Apartment 8E. See Bohr Dep. 21:15-27:19; Ching Dep. 51:6-21; Concannon Dep. 27:12-28:19; Noble Decl. Ex. P (Deposition of Nicolas Levesque ("Levesque Dep.")) 47:13-48:3.

Later that evening, after Concannon and his supervisor, Sergeant Edwin Ching ("Ching"), reviewed Jones' arrest warrant and photograph, they, along with Sergeant Franklin Bohr ("Bohr") and Officer Nicholas Levesque ("Levesque"), traveled to Apartment 8E.

Defs.' 56.1 ¶¶ 6, 43, 46; Ching Dep. 56:6-59:5; Concannon Dep. 29:3-32:19. Upon arrival, the officers knocked on the front door of the apartment, to which Cherille Yon ("Yon"), Jones' aunt, answered and gave them permission to enter. See Defs.' 56.1 ¶ 7. The officers observed several individuals in the apartment's living room, including Yon's "female friend," a woman named Monica, and Monica's boyfriend, Derrick. See Plaintiff's Opposition to Defendant's Rule 56.1 Statement ("Pl.'s 56.1") ¶ 8, ECF No. 61. Yon "advised" the officers that her "nephew" was "inside the back bedroom." Defs.' 56.1 ¶ 9.

Concannon, Levesque, and Ching walked down a hallway in the apartment towards the back bedroom, passing Tyreke Williams ("Williams") in the process. See Ching Dep. 69:13-70:4; Concannon Dep. 55:4-56:19; Levesque Dep. 52:12-17, 59:3-6, 65:13-66:7. When they arrived at the back bedroom, they encountered plaintiff either standing in the doorway or sitting inside playing video games. Compare Concannon Dep. 55:4-56:21 (playing video games inside the room), Levesque Dep. 54:1-18, 57:8-18, 57:8-58:6, Noble Decl. C (Deposition of Shawnita Yon-Rawls ("Yon-Rawls Dep.")) 21:9-22:10, and id. Ex. D (Plaintiff's 50-H Hearing) 14:10-15:20, with id. Ex. E (Deposition of Plaintiff ("Pl.'s Dep.")) 64:4-66:8 (at the front door of the back bedroom with his hands in the air).[1]

---

[1] The criminal complaint charging plaintiff with possession of the ammunition, magazines, and firearm found in the back bedroom, which Concannon

3

In addition to a "makeshift bed," a television, and video game system, the back bedroom contained a "big" washing machine and dryer along with "old comforters and old clothes." Defs.' 56.1 ¶¶ 28-29. Concannon, Levesque, and Ching each observed, on the windowsill inside the back bedroom approximately four feet away from plaintiff, a high capacity magazine to a firearm and a clear plastic box containing twenty cartridges of live ammunition and two shell casings of dispensed ammunition. See id. ¶¶ 12-13, 16; Ching Dep. 70:5-12; Concannon Dep. 67:4-11, 74:7-17; Levesque Dep. 59:3-17, 75:10-76:21.

After Yon separately granted permission to do so, Concannon searched the back bedroom. Defs.' 56.1 ¶¶ 20-21; Ching Dep. 70:14-22. He recovered a firearm, either an AP-9 or TEC-9,[2] containing a high-capacity magazine with eighteen 9-millimeter bullets. Id. ¶¶ 21, 35; compare Concannon Dep. 78:2-6 (TEC-9), with Noble Decl.

---

signed, indicated that Concannon first encountered Williams inside of the back bedroom along with plaintiff, not in the hallway leading therefrom. See Noble Decl. Ex. L. In his subsequent deposition, Concannon testified that the complaint "should have read that [Williams was] separately apprehended in the hallway coming from the area and not in the bedroom." Concannon Dep. 113:11-16; see id. 112:1-113:10, 113:17-115:7. Plaintiff does not contend that Williams' whereabouts within in Apartment 8E are of direct relevance to the propriety of plaintiff's arrest and prosecution, only that "Concannon's recollections were not reliable as to who was in the [back bed]room." Pl.'s 56.1 ¶¶ 10, 11, 18; see id. ¶¶ 38, 40. However, as demonstrated infra, whether plaintiff was inside of the back bedroom (as Concannon, along with Ching and Levesque recall), or standing in the doorway thereof (as plaintiff testified), is largely irrelevant.

[2] An AP-9 is a "knock off" of the "similar" TEC-9. People v. Palacios, No. C071180, 2015 WL 4917009, at *1 (Cal. Ct. App. Aug. 18, 2015).

Ex. J (AP-9).  The firearm was stashed underneath a single t-shirt, at the top of a laundry hamper, inside of a closet to which at least one of the two doors was closed.  Pl.'s 56.1 ¶¶ 21-22, 24-25.

By speaking with plaintiff and Yon, officers learned (1) that plaintiff was Jones' half-brother; (2) that Jones, while not immediately present, was currently residing in the back bedroom of Apartment 8E; (3) that Apartment 8E belonged to Yon; and (4) that plaintiff, who resided elsewhere in the Bronx with his parents, was a frequent visitor thereto.  See Ching Dep. 78:7-16, 85:13-88:6, 90:7-23, 101:25-102:11; Concannon Dep. 23:1-21, 27:12-28:19, 29:8-32:19, 52:1-12; 69:18-70:3, 90:10-91:7; Pl.'s Dep. 78:6-79:14.  Officers repeatedly asked plaintiff for Jones' location and/or telephone number, and "mocked Plaintiff for being loyal to his brother."  Pl.'s 56.1 ¶¶ 53, 56.  Yet plaintiff declined to inform them of "where Jones was and[/]or how to reach him."  Id. ¶ 55.

Concannon, with Ching's approval, placed plaintiff under arrest for criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03(1), (3)), and criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(8)).[3]  Defs.'

---

[3] Officers also arrested Williams for possession of the firearm.  See Levesque Dep. 117:16-118:22.

56.1 ¶¶ 37, 44; Concannon Dep. 22:6-22.  Concannon subsequently signed a criminal court complaint drafted by the Bronx District Attorney's Office "attesting to his observations of the facts surrounding plaintiff's arrest."  Defs.' 56.1 ¶ 38.

The next day, June 27, 2014, plaintiff was arraigned on charges of criminal possession of a firearm (N.Y. Penal Law § 265.01-b(1)); criminal possession of a weapon in the fourth degree (N.Y. Penal Law § 265.01); unlawful possession of certain ammunition feeding devices (N.Y. Penal Law § 265.37); unlawful possession of ammunition (N.Y.C. Admin. Code § 10-131(i)(3)); and unlawful possession of ammunition feeding devices (N.Y.C. Admin. Code § 10-131(i)(6)).  Defs.' 56.1 ¶ 41.  Plaintiff was released upon arraignment on June 27 and subsequently appeared in court on four occasions to defend the charges against him.  See id.; Noble Decl. Ex. M (August 1, 2014, October 14, 2014, January 7, 2015, and March 18, 2015).

In a two paragraph order, issued in December 2014, the New York State Supreme Court, Justice Bruce, denied the Bronx District Attorney's application "for an order directing [plaintiff] to submit to a buccal swab," as prosecutors had not established "probable cause to believe the suspect," plaintiff, "ha[d] committed the crime."  Declaration of Aaron M. Rubin ("Rubin Decl.") Ex. 4, ECF No. 59.  Four months later, on March 18, 2015, the Bronx District Attorney dismissed the charges against

plaintiff.  Defs.' 56.1 ¶ 42; Noble Decl. Ex. N.

**b. Procedural Posture**

Plaintiff commenced this litigation in September 2015, and filed the operative first amended complaint in April 2016, asserting claims against Concannon, Levesque, Ching, Bohr, John Does 1-3, and the City of New York.  Specifically, the first amended complaint asserts claims for false arrest, false imprisonment, malicious prosecution, malicious abuse of process, and denial of a fair trial against the individual officers under 42 U.S.C. § 1983 and New York law.  Am. Compl. ¶¶ 45-47, 53-54. The first amended complaint also alleges that the City of New York is liable under Section 1983 pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), as well as vicariously liable for its officers' torts under New York law.  Am. Compl. ¶¶ 48-52, 55-56.

In January 2018, following discovery in which all named parties were deposed, defendants moved for summary judgment on the entirety of plaintiff's first amended complaint.  In response, plaintiff "concede[d] dismissal and voluntarily withdr[ew]": (1) his claims against Bohr and Levesque, (2) his malicious abuse of process and denial of fair trial claims under both Section 1983 and New York law, and (3) his "municipal liability [claim] pursuant to Monell" (the "Withdrawn Claims").  Pl.'s Opp'n at 1.  Plaintiff explains that, "[a]lthough there was a reasonable basis to believe

that" his malicious abuse of process, denial of fair trial, and
Monell claims "were viable at the outset of this lawsuit, the
discoverable evidence has now shown that these claims cannot be
proven at trial," and "[s]imilarly," his claims against Bohr and
Levesque are no longer viable "because the discoverable evidence
shows that these police officers were not sufficiently involved in
the conduct at issue."[4] Id. at 1. However, "[p]laintiff maintains
his federal and state law claims of false arrest and malicious
prosecution against the City of New York, Police Officer Concannon,
and his supervisor, [Sergeant] Ching." Id. at 1-2.

## II. DISCUSSION

Summary judgment is granted where "the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
"A fact is material when it might affect the outcome of the suit
under governing law," and "[a]n issue of fact is genuine if the

---

[4] Plaintiff's motion to dismiss the Withdrawn Claims, "properly considered
as an amendment to the pleadings based on [Federal] Rule [of Civil Procedure]
15(a)(2)," Smith v. Artus, 522 F. App'x 82, 84 n.2 (2d Cir. 2013) (summary
order), is granted with prejudice. There is no evidence of either undue delay
or bad faith on plaintiff's part or any resulting undue prejudice to defendants,
who consent to the dismissal. See generally Defs.' Reply. We construe
plaintiff's candor regarding the lack of viability of the Withdrawn Claims as
expressing his intention to dismiss those claims with prejudice. See Pac. Elec.
Wire & Cable Co. v. Set Top Int'l Inc., No. 03 Civ. 9623(JFK), 2005 WL 578916,
at *7 (S.D.N.Y. Mar. 11, 2005) (dismissal with prejudice is "the only prudent
option" where "plaintiff [i]s unwilling, or unable, to submit the claims at
issue to the factfinder"). Regardless, as we describe infra, the statutes of
limitations for the Withdrawn Claims have lapsed, such that plaintiff would be
precluded from successfully reasserting those claims even if dismissed without
prejudice.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). "In assessing the record to determine whether there is a genuine issue to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010). "Although summary judgment is proper where there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, district courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotations marks and citations omitted).

We proceed by initially reviewing, *sua sponte*, plaintiff's claims against the John Doe defendants, which we dismiss with prejudice as time-barred. We next analyze plaintiff's Section 1983 claims against Ching, Concannon, and the City of New York, for which we grant judgment to defendants. Finally, because plaintiff's state law claims are governed by the same standards as the analogous Section 1983 claims, we grant judgment to defendants on the former as well.

### a. Claims Against John Doe Officers

By choosing to maintain only his claims against Ching, Concannon, and the City of New York, see Pl.'s Opp'n at 1-2, plaintiff has implicitly withdrawn his claims against the John Doe defendants. Nor is there any mechanism for plaintiff to convert the John Doe defendants into named defendants. Even assuming plaintiff were to seek leave to amend his first amended complaint to identify the John Doe defendants at this stage, such a motion would be futile, as the statutes of limitations have run for the claims against them. See Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000).

Section 1983's three-year statute of limitations, see Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015), was triggered for plaintiff's malicious abuse of process claim on June 26, 2014, when plaintiff was arrested, see Anderson v. County of Putnam, No. 14-CV-7162 (CS), 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016); for plaintiff's false arrest and false imprisonment claims on June 27, 2014, when plaintiff was arraigned, see Wallace v. Kato, 549 U.S. 384, 389-90 (2007); and for plaintiff's malicious prosecution and denial of fair trial claims on March 18, 2015, when the charges against plaintiff were dismissed, see Spak v. Phillips, 857 F.3d 458, 462 (2d Cir. 2017); Pizarro v. City of New York, No. 14-CV-507 (KAM)(VVP), 2015 WL 5719678, at *7 n.8 (E.D.N.Y. Sept. 29, 2015); cf. Martin v. Merola, 532 F.2d 191, 194 (2d Cir. 1976).

Now, in August 2018, the limitations period for each claim has lapsed.

Further, any attempt to relate back claims against the John Doe defendants to the filing of the original complaint in September 2015, or to the first amended complaint in April 2016, would be in vain. "[I]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued. Thus, such an amendment may only [relate back] when all of the specifications of [Federal Rule of Civil Procedure] 15(c) are met." Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 468 (2d Cir. 1995) (alterations, citations, and internal quotation marks omitted).

Rule 15(c)(1)(C), which allows relation back in the event of a "mistake concerning the proper party's identity," is inapplicable because "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" Hogan v. Fischer, 738 F.3d 509, 517-18 (2d Cir. 2013) (quoting Barrow, 66 F.3d at 470); see, e.g., Anderson v. City of Mount Vernon, No. 09 Civ. 7082(ER)(PED), 2014 WL 1877092, at *4 (S.D.N.Y. Mar. 28, 2014) (Plaintiff's "proposed amendment naming Sergeant Marcucilli as a defendant after the statute of limitations had run does not correct a mistake in the original complaint, but instead supplies information Plaintiff lacked at the outset." (internal quotations

marks and alterations omitted)).

Rule 15(c)(1)(A), which permits relation back if "the law that provides the applicable statute of limitations allows relation back," is similarly unhelpful to plaintiff. New York law authorizes relation back for a Section 1983 claim under either C.P.L.R. Section 203 or Section 1024, neither of which assists plaintiff here. Akin to Rule 15(c)(1)(C), Section 203 requires a "mistake by plaintiff as to the identity of the proper parties," which cannot be satisfied by a plaintiff's failure to timely name a John Doe defendant. See also Cotto v. City of New York, No. 16 Civ. 8651 (NRB), 2018 WL 3094915, at *6 (S.D.N.Y. June 20, 2018); McElligott v. City of New York, No. 15 Civ. 7107 (LGS), 2017 WL 6210840, at *6 (S.D.N.Y. Dec. 7, 2017). Section 1024 requires that a plaintiff "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." Hogan, 738 F.3d at 519 (quoting Bumpus v. N.Y.C. Transit Auth., 66 A.D.3d 26, 29, 883 N.Y.S.2d 99 (2d Dep't 2009)). Yet, when at the close of discovery, plaintiff "has had ample time to identify" the John Doe defendant but has failed to do so, the plaintiff "simply cannot continue to maintain a suit against" him. Coward v. Town & Village of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (quoting Kearse v. Lincoln Hosp., No. 07 Civ. 4730(PAC)(JCF), 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009)); see Cotto, 2018 WL 3094915, at *6 ("New York courts stress that any failure to

12

exercise due diligence to ascertain the John Doe's name subjects the complaint to dismissal as to that party." (internal quotation marks and alterations omitted)).

Thus, even treating plaintiff's implicit motion to withdraw his claims against the John Doe defendants as a motion for leave to amend his first amended complaint to identify the Joe Does, it is denied as futile. Plaintiff's false arrest, false imprisonment, malicious prosecution, malicious abuse of process, and denial of fair trail claims against the Joe Doe officers are therefore dismissed with prejudice. See Lopez v. City of New York, No. 15 Civ. 1650 (NRB), 2017 WL 213243, at *4 (S.D.N.Y. Jan. 10, 2017).

### b. Claims Under Federal Law – Section 1983

#### i. False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). The elements of a false arrest claim under New York law are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not

13

otherwise privileged."[5] Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (quoting Broughton v. State, 37 N.Y.2d 451, 456, 335 N.E.2d 310 (1975)).

The existence of probable cause to arrest, which renders a confinement privileged, is a complete defense to a false arrest claim under Section 1983. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). The arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked at the time of the arrest, or the offense with which the plaintiff was charged. Jaegly v. Couch, 439 F.3d 149, 153-54 (2d Cir. 2006). Instead, a false arrest claim will fail as long as there was probable cause to arrest the plaintiff for any offense. Id.

"An arresting officer has probable cause when the officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (quoting Weyandt, 101 F.3d at 852). "When determining whether probable cause existed to support an arrest,

---

[5] To the extent plaintiff also asserts a false imprisonment claim, the Court's discussion of false arrest is *apropos* as the elements of false arrest and false imprisonment under Section 1983 are the same. Fanelli v. City of New York, No. 13 Civ. 1423(KBF), 2013 WL 6017904, at *2 n.4 (S.D.N.Y. Nov. 1, 2013).

we 'consider those facts available to the officer at the time of arrest and immediately before it,'" id. (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)), keeping in mind that "an officer may not disregard plainly exculpatory evidence," Fabrikant v. French, 691 F.3d 193, 214 (2d Cir. 2012) (quoting Panetta, 460 F.3d at 395). The arresting officer's subjective state of mind, however, is "irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

Even absent probable cause to arrest plaintiff, a police officer will be entitled to qualified immunity if he had "arguable probable cause" to arrest. Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009) (per curiam). Arguable probable cause, "not [to] be misunderstood to mean almost probable cause," Dancy v. McGinely, 843 F.3d 93, 107 (2d Cir. 2016) (quoting Jenkins, 478 F.3d at 87), exists "when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law," Droz, 580 F.3d at 109 (quoting Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007)).

Ching and Conannon argue that they had probable cause to arrest plaintiff for constructive possession of the ammunition and magazine found on the windowsill, in contravention of New York Penal Law § 265.37 (unlawful possession of certain ammunition feeding devices) and New York City Administrative Code § 10-

131(i)(3), (6) (unlawful possession of ammunition and ammunition feeding devices), and for constructive possession of the firearm and magazine found in the laundry hamper in the closet, in contravention of New York Penal Law § 265.01-b(1) (criminal possession of a firearm) and § 265.01 (criminal possession of a weapon in the fourth degree), all of the offenses for which plaintiff was subsequently charged.  We agree.

"The doctrine of constructive possession allows the police to find probable cause to arrest anyone in a dwelling when contraband is discovered in plain view and it reasonably appears that all members of the dwelling exercised dominion and control over the area in which the contraband is found."  Takacs v. City of New York, No. 09 Civ. 481(LBS), 2011 WL 8771384, at *3 (S.D.N.Y. Jan. 24, 2011) (citing United States v. Heath, 455 F.3d 52, 57 (2d Cir. 2006)); see Abreu v. Romero, No. 08 Civ. 10129(LAP), 2010 WL 4615879, at *6 (S.D.N.Y. Nov. 9, 2010) ("Where there is evidence that an individual is in constructive possession of contraband, police officers have reasonably trustworthy information sufficient to believe the crime of possession is being committed and therefore have probable cause to arrest."), aff'd, 466 F. App'x 24 (2d Cir. 2012) (summary order).

In Heath, the Second Circuit considered whether there was probable cause to arrest a criminal defendant, found sitting on a bed in a second floor bedroom, for constructively possessing bags

16

of cocaine located "in plain sight" at the bottom of the stairs leading to the second floor. 455 F.3d at 56-57. The answer was yes.

> Under the circumstances, whether Heath actually saw the bags of cocaine at the bottom of the stairs before the police entered the . . . residence is of no import. He could see them, and in fact would be expected to see them, in the regular course of walking through the small home's public spaces. As a result, a person of reasonable caution could properly have concluded that Heath had committed or was committing a crime. After all, those who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense.

Id. at 57 (internal quotation marks and citation omitted); see United States v. MacDonald, 916 F.2d 766, 768, 770 (2d Cir. 1990) (concluding that an undercover agent's observation of cocaine and marijuana in plain view throughout an apartment containing six men provided probable cause to arrest all six); Morston v. City of New York, No. 14-CV-5079 (RRM)(SJB), 2017 WL 4480147, at *4 (E.D.N.Y. Sept. 28, 2017) (concluding that law enforcement had probable cause to arrest defendant upon exiting a hotel room in which a 9-millimeter firearm was found in plain view); Takacs, 2011 WL 8771384, at *3-4 (finding probable cause to arrest defendant for possession of narcotics located in plain view in the apartment living room).

Here, as in Heath, the ammunition and magazine were found in

plain view[6] in a common area of the residence: on the windowsill of a room which, in addition to being Jones' living quarters, also operated as a laundry room, and contained both a television set and a video game system.  Defs.' 56.1 ¶¶ 27, 29; Pl.'s 56.1 ¶ 27; Yon-Rawls Dep. 15:8-10 (The back bedroom "was . . . [Yon's] laundry room, she had a washing machine and a dryer in there and she had a lot of junk, because she's a junkie."); 82:21-23 ("Q. Did the [back bedroom] look like a room everyone in the apartment would have access to?  A. They do.  The laundry room was in there, with a washing machine and dryer." (emphasis added)); cf. United States v. Shaw, 269 F. Supp. 2d 90, 92 (E.D.N.Y. 2003) ("[T]he laundry room is a common area to which the defendant had access.  As such, the defendant had no legitimate expectation of privacy.").  Further, Ching and Concannon knew that plaintiff had a non-

_____

[6] Pointing to a grainy photograph of the windowsill taken at the time of his arrest, plaintiff suggests that the ammunition and magazine were not in "plain view" as the windowsill was cluttered with other items: several boxes of tequila, books, a steam iron, and a carton of cigarettes.  See Pl.'s Opp'n at 2 (citing Rubin Decl. Ex. 5); Pl.'s Dep. 87:3-23; see also Noble Decl. Ex. F.  An item is in "plain view" if it may be observed, and its incriminating nature immediately apparent, sans manipulation.  See United States v. Gamble, 388 F.3d 74, 76 (2d Cir. 2004).  That is exactly what happened here.  Aside from being located on a "cluttered" windowsill, the ammunition and magazine were neither covered nor concealed.  See Rubin Decl. Ex. 5.  Concannon, Levesque, and Ching consequently observed the contraband upon entering, but before searching, the back bedroom.  See Ching Dep. 70:5-12; Concannon Dep. 67:4-11, 74:7-17; Levesque Dep. 59:3-17, 75:10-76:21.  Indeed, law enforcement officers are trained to identify material of evidentiary value based on a single scan of the premises.  Cf. United States v. Carneglia, 603 F. Supp. 2d 488, 492 (E.D.N.Y. 2009) ("A trained and experienced agent may utilize his investigative skills to scan the defendant's home, both to ensure that the premises are free of potential danger and to identify evidence related to the case."), aff'd, 403 F. App'x 581 (2d Cir. 2010) (summary order).  No reasonable jury could conclude that the ammunition and magazine were not in plain view based on the photograph at issue.

incidental connection to Apartment 8E and its residents; Yon had informed them that plaintiff was her nephew, as well as Jones' half-brother, and a "frequent visitor" to the apartment. See Walker v. City of New York, 148 A.D.3d 469, 470, 50 N.Y.S.3d 320 (1st Dep't 2017) (arrestee was "more than just merely present at the apartment when the police arrived" as, *inter alia*, she was in a relationship with a tenant and frequently slept there); People v. Edwards, 206 A.D.2d 597, 597-98, 614 N.Y.S.2d 469 (3d Dep't) ("[T]here is no evidence that defendant exercised dominion or control over the premises—he neither owned, leased, resided at or was a frequent visitor to the apartment."), leave to appeal denied, 84 N.Y.2d 907, 645 N.E.2d 1224 (1994).

Indeed, the case for probable cause with respect to constructive possession of the ammunition and magazine is even stronger here than in Heath. It is not simply that plaintiff could have accessed the back bedroom where the ammunition and magazine were found in plain view, officers encountered plaintiff either sitting inside or standing in the doorway of the back bedroom, within four feet of the ammunition and magazine. See People v. Mattison, 41 A.D.3d 1224, 1225, 837 N.Y.S.2d 464 (4th Dep't) (finding evidence sufficient to convict defendant as, *inter alia*, arresting officers saw defendant either exiting or standing in the doorway of the room in which narcotics were found in plain view), leave to appeal denied, 9 N.Y.3d 924, 875 N.E.2d 898 (2007); People

19

v. Banks, 14 A.D.3d 726, 727-28, 786 N.Y.S.2d 861 (3d Dep't) (finding evidence sufficient to convict defendant as, *inter alia*, "the officer watching through the bathroom window saw defendant in the doorway to the bathroom and the drugs were found in plain view on the bathroom floor"), leave to appeal denied, 4 N.Y.3d 851, 830 N.E.2d 324 (2005); People v. Perez, 259 A.D.2d 274, 274, 687 N.Y.S.2d 84 (1st Dep't) ("Defendant's constructive possession of the contraband . . . was established by direct evidence, namely defendant's close proximity, in a small studio apartment, to about $10,000 worth of cocaine and a gun, both of which were in plain view."), leave to appeal denied, 93 N.Y.2d 976, 716 N.E.2d 1107 (1999). Thus, as a matter of law, Ching and Concannon had probable cause to arrest plaintiff for exercising dominion and control over the ammunition and magazine on the windowsill in the back bedroom.[7]

The firearm and magazine therein, unlike the ammunition and magazine on the windowsill, were not in plain view, but were instead concealed by a single t-shirt in a laundry hamper inside of a closet to which at least one of the two doors was closed. Defs.' 56.1 ¶¶ 22, 24-25, 35; Pl.'s 56.1 ¶ 23. Yet dominion and

---

[7] As we explained *supra*, probable cause for a single offense is sufficient to defeat a false arrest claim. See Jaegly, 439 F.3d at 153-54. Yet, as we discuss *infra*, probable cause for each charged offense is necessary to defeat a malicious prosecution claim. Thus, while it unnecessary to consider whether officers had probable cause to arrest plaintiff for possessing the firearm (and magazine therein) for purposes of plaintiff's false arrest claim, it will be necessary with respect to his malicious prosecution claim. We consider probable cause for all offenses together to avoid a disjointed analysis.

control, and thus constructive possession, "can be establish[ed] when there is evidence . . . [that] the defendant is in close proximity to contraband stored in a location with limited access." Brown v. City of New York, No. 303170/13, 56 Misc. 3d 1218(A), 2017 WL 3708697, at *4 (Sup. Ct. Aug. 25, 2017). Here, plaintiff was located, alone, in close proximity to the partially closed closet in which the firearm was found. See People v. Whitehead, 159 A.D.2d 741, 742, 552 N.Y.S.2d 685 (2d Dep't 1990) ("The jury could reasonably infer from the evidence . . . that the defendant . . . , an employee found in the grocery store, was . . . in constructive possession of the fireworks that were situated next to or near her in a Plexiglas-enclosed area to which no customers had access."). Moreover, the basis for Ching and Concannon to believe that plaintiff possessed the firearm was only strengthened by plaintiff's connection to the ammunition and magazine previously found on the windowsill. See Ching Dep. 70: 18-20 ("[S]ince there's ammunition there, the firearm is most likely around if not gone already."); cf. United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994) ("Pieces of evidence must be viewed not in isolation but in conjunction.").

Notwithstanding plaintiff's connection to the apartment, and localization to a common area in which certain contraband was found in plain view and other contraband found in a nearby restricted area, plaintiff argues that probable cause was lacking for three

reasons.

First, plaintiff maintains that Ching and Concannon's awareness of contradictory, exculpatory information, *viz.*, that Jones was the "true owner" of the firearm and "true occupant" of the back bedroom, vitiates probable cause. See Pl.'s Opp'n at 4. This argument is unpersuasive. Plaintiff was arrested for criminal possession, not ownership, of a firearm. See Cammick v. City of New York, No. 96 Civ. 4374(RPP), 1998 WL 796452, at *3 (S.D.N.Y. Nov. 17, 1998). Further, that Jones may have exercised dominion and control over Apartment 8E's back bedroom and its contents is not mutually exclusive with plaintiff doing so. Indeed, "[i]t is of no moment" to a finding of constructive possession "that other individuals also may have exercised control over the weapon[]." United States v. Dhinsa, 243 F.3d 635, 677 (2d Cir. 2001).

Second, plaintiff argues that probable cause was lacking as officers did not observe plaintiff reaching for the ammunition, magazine, or firearm, nor did they identify any of plaintiff's personal effects (e.g., clothes, mail, or personal photographs) in the apartment. Pl.'s Opp'n at 4. While we agree that such facts would bolster a probable cause finding, plaintiff has offered no authority that their existence is a requirement thereof.

Third, plaintiff suggests that, for the aforementioned reasons, "the New York Supreme Court Justice found in the context of Plaintiff's underlying criminal case that the circumstances

giving rise to Defendants' arrest of Plaintiff did not establish probable cause," and that it is "not surprising . . . that the Bronx District Attorney's Office dismissed all of the charges against Plaintiff." Id. at 6.

It is not clear what weight plaintiff believes the Supreme Court's two paragraph decision rejecting a motion to compel a buccal swab is due in this action. It is true that "[w]here a court has already determined the issue of probable cause to make an arrest that is the subject of a claim of false arrest, a party may, in appropriate circumstances, be estopped from relitigating that issue." Kent v. Katz, 312 F.3d 568, 573-74 (2d Cir. 2002); see, e.g., Elleby v. City of New York, No. 15cv109, 2016 WL 4367962, at *3 (S.D.N.Y. Aug. 11, 2016). Plaintiff is unable to establish the "appropriate circumstances" necessary to preclude Ching and Concannon from relitigating the probable cause determination in this action.

Under New York law, the "essential ingredients" of collateral estoppel are: (1) "the identical issue necessarily must have been decided in the prior action and be decisive of the present action," and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." Juan C. v. Cortines, 89 N.Y.2d 659, 667, 679 N.E.2d 1061 (1997). The Supreme Court's holding consists of only a single sentence: "Specifically the People have not provided this

Court a sufficient basis to fulfill the first requirement-probable cause to believe the suspect has committed the crime." Rubin Decl. Ex. 4. However, the Order does not specify which crime, or crimes, lacked probable cause. Indeed, use of the singular definite article "the" implies that only one offense, perhaps possession of the firearm, lacked probable cause. If so, the Supreme Court did not decide "the identical issue" as in this litigation, whether there was probable cause to arrest plaintiff for any offense, which is sufficient to defeat his false arrest claim. See Jaegly, 439 F.3d at 153-54; Toliver v. City of New York, No. 10 Civ. 3165(PAC)(JCF), 2012 WL 7782720, at *7 (S.D.N.Y. Dec. 10, 2012) (declining to apply collateral estoppel where, as here, it was not clear that the state criminal court decided that officers lacked probable cause to arrest plaintiff), report and recommendation adopted, 2013 WL 1155293 (S.D.N.Y. Mar. 21, 2013).

Even more fatal to plaintiff's attempted invocation of collateral estoppel is the rule that "a nonparty to the prior litigation may be collaterally estopped by a determination in that litigation only if he has 'a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.'" Jenkins, 478 F.3d at 85 (quoting D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664, 564 N.E.2d 634 (1990)). The State

of New York, through the Bronx District Attorney Office's, not Ching or Concannon, was plaintiff's adversary in the state court criminal proceeding. See id. The New York Court of Appeals has explained that "[t]he [C]ity [of New York] and the District Attorney are separate entities and . . . do not stand in sufficient relationship to apply the doctrine [of collateral estoppel]." Brown v. City of New York, 60 N.Y.2d 897, 898-99, 458 N.E.2d 1250 (1983). Because the City of New York is not in privity with the Bronx District Attorney then *a fortiori* neither are its police officers, including Ching and Concannon, to whom the preclusive effect of the Supreme Court's decision will not extend. See Jenkins, 478 F.3d at 85.

Regardless, even if Ching and Concannon were estopped from relitigating the probable cause determination, they would still have had arguable probable cause to arrest plaintiff, and would therefore be entitled to qualified immunity. See Droz, 580 F.3d at 109.

Finally, with respect to the Bronx District Attorney's dismissal of the charges against him, plaintiff has offered no evidence suggesting that the dismissal constituted a concession that plaintiff was arrested without probable cause. See Terry v. Metro-N. Commuter R.R., No. 155553/13, 45 Misc.3d 1219(A), 2014 WL 6610055, at *2 (Sup. Ct. Oct. 22, 2014); cf. Colon v. City of New York, 60 N.Y.2d 78, 84, 455 N.E.2d 1248 (1983). Indeed, the record

is completely devoid of evidence of the Bronx District Attorney's motivations for dismissing the charges, for which there could have been a multitude of valid reasons.

Given the existence of probable cause to arrest plaintiff for constructively possessing the ammunition, magazines, and firearm, plaintiff's false arrest claims against Ching and Concannon are dismissed.

### ii. Malicious Prosecution

The elements of a malicious prosecution claim under Section 1983 are "substantially the same" as the elements under New York law. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). To prevail on a malicious prosecution claim under New York law, plaintiff must establish "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003) (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)). "Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim; however, the requirements of attending criminal proceedings and obeying the conditions of bail suffice on that score." Id. (citing Murphy, 118 F.3d at 946).

Akin to the impact of probable cause to arrest on a false arrest claim, probable cause to charge is a complete defense to a

malicious prosecution claim. See Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014). However, unlike a false arrest claim, which fails if there was probable cause to arrest plaintiff for any offense, in the malicious prosecution context there must be probable cause for each offense charged. See Polanco v. City of New York, No. 14 Civ. 7986 (NRB), 2018 WL 1804702, at *7 (S.D.N.Y. Mar. 28, 2018); Allen v. City of New York, 480 F. Supp. 2d 689, 714-15 (S.D.N.Y. 2007). "Because the Court has already found that there was probable cause to arrest Plaintiff, in order to prevail on his malicious prosecution claim, Plaintiff must show that the discovery of some intervening fact made the probable cause 'dissipate' between the time of the arrest and the commencement of the prosecution." Keith v. City of New York, No. 11 Civ. 3577(KPF), 2014 WL 6750211, at *18 (S.D.N.Y. Nov. 1, 2014) (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996)); see De Santis v. City of New York, No. 10 Civ. 3508(NRB), 2011 WL 4005331, at *8 (S.D.N.Y. Aug. 29, 2011).

As discussed *supra*, Concannon and Ching had probable cause to arrest plaintiff for all of the offenses for which he was subsequently charged, and there is no indication in the record that any facts came to light prior to plaintiff being charged that would undermine that finding.[8] Accordingly, Ching and Concannon

---

[8] Even assuming, *arguendo*, Ching and Concannon had only arguable probable cause to arrest plaintiff, they would still be entitled to qualified immunity

had probable cause to both arrest and charge plaintiff.

While the existence of probable cause to charge is sufficient to defeat plaintiff's malicious prosecution claims against Ching and Concannon, these claims fail for yet another reason—that plaintiff has not established that either acted with malice.

"[M]alice may be shown by proving that the prosecution complained of was undertaken for improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." Manganiello v. City of New York, 612 F.3d 149, 164 (2d Cir. 2010) (quoting Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996)); see Lowth, 82 F.3d at 573 (Malice requires a showing by plaintiff that defendants had "a wrong or improper motive, something other than a desire to see the ends of justice served.").

Plaintiff's memorandum of law does not directly address malice, but his Local Rule 56.1 statement implies that Ching and Concannon acted with malice by arresting and prosecuting plaintiff in an effort to compel him to disclose the whereabouts of his half-brother, Jones, for whom there was an open arrest warrant. See, e.g., Pl.'s 56.1 ¶¶ 53-56. Plaintiff has not cited any authority

---

with respect to plaintiff's malicious prosecution claim for the same reason. See Tompkins v. City of New York, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) ("Arguable probable cause to charge exists if there was arguable probable cause to arrest the plaintiff for the crimes in question and 'no new information learned subsequent to the arrest made it manifestly unreasonable for the defendant officer to charge the plaintiff with those crimes.'" (quoting Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order))).

for the proposition that such motivation, even assuming it was one Ching and Concannon held, constitutes malice.  Nor could he.  Taken to its logical conclusion, plaintiff's argument would mean that a law enforcement officer acts with malice by initiating an otherwise valid criminal proceeding against an individual because he intends to utilize the defendant to bring others to justice, say, by using the defendant as a cooperator or as a confidential informant.  That simply cannot be.  Cf. United States v. Sanders, 211 F.3d 711, 719 (2d Cir. 2000) ("A presumption of vindictiveness is also not warranted merely because a threat to prosecute was carried out after the defendants refused to divulge their source.  It is precisely the responsibility of the prosecutor to weigh 'the society interest in prosecution' against the potential benefits from a defendant's cooperation." (citing United States v. Goodwin, 457 U.S. 368, 382 (1982))).

Given that Ching and Concannon had probable cause to charge plaintiff, and that their motivation in doing so, even if true, was not malicious, plaintiff's malicious prosecution claims against them are dismissed.

### iii. Claims Against the City of New York

According to plaintiff's memorandum of law, despite having "dismiss[ed] and voluntarily withdraw[n]" his claim for "municipal liability pursuant to Monell," he "maintains his federal . . . claims of false arrest and malicious prosecution against the City

of New York."  Pl.'s Opp'n at 1.

However, "Monell sets forth the exclusive theory under which an individual may sue a municipality for a violation of federal constitutional rights under color of state law." Corbett v. City of New York, No. 1:15-cv-09214-GHW, 2016 WL 7429447, at *6 (S.D.N.Y. Dec. 22, 2016).  Thus, by withdrawing his Monell claim— not to mention by failing to otherwise address or defend his municipal liability claim in his opposition brief, see Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014)—plaintiff has effectively withdrawn any claims against the City of New York under Section 1983.

### c. State Law Claims[9]

Plaintiff's remaining state law claims are for false arrest and malicious prosecution against Ching and Concannon, as well as the City of New York under the common law doctrine of *respondeat superior*.  None of these claims withstands summary judgment.

---

[9] As none of plaintiff's claims under federal law survive summary judgment, defendants request that this Court decline to exercise supplemental subject matter jurisdiction over plaintiff's state law claims.  It is within a District Court's discretion to exercise supplemental jurisdiction over state law claims after having "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262-63 (2d Cir. 2006).  Because the standards for false arrest and malicious prosecution are "substantially the same" under both Section 1983 and New York law, see Boyd, 336 F.3d at 75, we see no reason not to exercise supplemental jurisdiction to rule on plaintiff's analogous state law claims. See Blue v. City of New York, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *13 (S.D.N.Y. June 4, 2018) (exercising supplemental jurisdiction over state law claims governed by the same legal standards as analogous Section 1983 claims).

Plaintiff's state law claims against Ching and Concannon fail for the same reasons as plaintiff's Section 1983 claims against them, that Ching and Concannon had probable cause to arrest and charge plaintiff, and that there is no evidence either acted with malice. See Jenkins, 478 F.3d at 84 ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." (quoting Weyandt, 101 F.3d at 852)); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citing Colon, 60 N.Y.2d at 82, 455 N.E.2d 1248) (noting that probable cause is a complete defense to a malicious prosecution claim under New York law); Jenkins v. City of New York, 2 A.D.3d 291, 292, 770 N.Y.S.2d 22 (1st Dep't 2003) (plaintiff's failure to demonstrate malice is fatal to his cause of action for malicious prosecution under New York law).

The upshot is that plaintiff's state law claims against the City of New York also fail, as "[t]he dismissal of [plaintiff's] underlying theories of liability eliminates the prospect of vicarious liability." Conte v. County of Nassau, 596 F. App'x 1, 3 (2d Cir. 2014) (summary order) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 339, 349 (2d Cir. 1996)); see Norton v. Town of Brookhaven, 33 F. Supp. 3d 215, 237 (E.D.N.Y. 2014) ("[H]aving determined that the Plaintiffs fail to state a New York State malicious prosecution claim against the Individual Defendants, the

Court finds that such a claim against the Town based on *respondeat superior* necessarily fails as a matter of law.").

Accordingly, we grant judgment to defendants on plaintiff's false arrest, false imprisonment, and malicious prosecution claims under New York law.

## III. CONCLUSION

Defendants' motion for summary judgment is granted *in toto*. The Clerk of Court is respectfully directed to enter judgment for defendants, terminate docket number 53, and close this case.

Dated:     New York, New York
           August **/6**, 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Counsel for plaintiff:        Aaron M. Rubin
                            Law Office of Aaron M. Rubin

Counsel for defendants:      Alexander M. Noble
                            Matthew Stein
                            New York City Law Department